UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JAMES D.,<br><br>                    Plaintiff,<br><br>    v.<br><br>NANCY A. BERRYHILL, Deputy Commissioner of Social Security for Operations,<br><br>                    Defendant. | CASE NO. C18-5035-JLR-MAT<br><br>REPORT AND RECOMMENDATION RE: SOCIAL SECURITY DISABILITY APPEAL |

Plaintiff proceeds through counsel in his appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied plaintiff's application for Supplemental Security Income (SSI) after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda, the Court recommends this matter be REMANDED for further administrative proceedings.

**FACTS AND PROCEDURAL HISTORY**

Plaintiff was born on XXXX, 1963.[1] He has a GED and has held some jobs in the past,

---

[1] Dates of birth must be redacted to the year. Fed. R. Civ. P. 5.2(a)(2) and LCR 5.2(a)(1).

REPORT AND RECOMMENDATION
PAGE - 1

but nothing qualifying as "past relevant work." (AR 37, 511, 515.)

Plaintiff protectively filed an SSI application on August 21, 2014. (AR 27, 274-75.) The application was denied initially and on reconsideration. Although plaintiff also filed an application for Disability Insurance Benefits (DIB) in 2014, he later withdrew that application and amended his alleged onset date for SSI to August 21, 2014. (AR 27, 53.)

On September 23, 2016, ALJ Vadim Mozyrsky held a hearing, taking testimony from plaintiff and a vocational expert (VE). (AR 45-68.) On November 10, 2016, the ALJ issued a decision finding plaintiff not disabled. (AR 27-38.) The ALJ found changed circumstances in plaintiff's age category and declined to adopt the RFC and other findings from a 2013 ALJ decision given the existence of new and material evidence showing good recovery from a knee surgery and additional evidence relating to mental impairments. (AR 28.)[2]

Plaintiff timely appealed. The Appeals Council denied plaintiff's request for review on November 20, 2017 (AR 1-6), making the ALJ's decision the final decision of the Commissioner. Plaintiff appealed this final decision of the Commissioner to this Court.

## JURISDICTION

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must be determined whether the claimant is gainfully employed. Plaintiff performed yard work and

---

[2] An ALJ twice denied applications for SSI and DIB, and the final decision was ultimately affirmed on appeal in this Court. (AR 27, 72-85, 93-44, 100-17, 125-30); *Dailey v. Colvin*, C14-05691-KLS (Dkts. 21-22) (W.D. Wash. April 2, 2015).

REPORT AND RECOMMENDATION
PAGE - 2

other jobs for people after the alleged onset date, two-to-three times a week, for no more than three hours at a time. The ALJ found this work activity did not amount to substantial gainful activity.

At step two, it must be determined whether a claimant suffers from a severe impairment. The ALJ found the following impairments severe: status post bilateral knee arthroscopic surgery, polysubstance dependence, cognitive disorder, depression, anxiety, PTSD, and personality disorder. Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found plaintiff's impairments did not meet or equal the criteria of a listed impairment.

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found plaintiff able to perform less than the full range of medium work, with the following limitations: lift and carry fifty pounds occasionally and twenty-five pounds frequently and push and pull those same amounts; sit six hours and stand and walk a total of six hours in an eight-hour workday; occasionally climb ramps and stairs, but no climbing of ladders, ropes, or scaffolds; frequently balance and stoop and occasionally kneel, crouch, and crawl; avoid concentrated exposure to vibrations and no work around hazards such as heights, heavy operating machinery, or motor vehicles; simple, routine, repetitive tasks and simple work-related decisions; superficial contact with the general public, such as passing in hallways, and occasional interaction with coworkers; and tasks that can be accomplished independently without coordinated efforts with others. Plaintiff has no past relevant work.

If a claimant demonstrates an inability to perform past relevant work, or has no past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national

REPORT AND RECOMMENDATION
PAGE - 3

economy. With the assistance of the VE, the ALJ found plaintiff capable of performing other jobs, such as work as a laundry worker, drier attendant, and housekeeping cleaner.

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). *Accord Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015) ("We will set aside a denial of benefits only if the denial is unsupported by substantial evidence in the administrative record or is based on legal error.") Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff argues the ALJ erred in rejecting the opinions of four psychological examiners and evidence from a Division of Vocational Rehabilitation (DVR) counselor. He requests remand for further administrative proceedings. The Commissioner argues the ALJ's decision has the support of substantial evidence and should be affirmed.

<u>Medical Opinions</u>

The ALJ gave little weight to the opinions of four different examining psychologists, each of whom evaluated plaintiff in relation to his pursuit of state benefits through Washington State's Department of Social & Health Services (DSHS). (AR 34-36.) The ALJ assigned significant weight to the contradictory opinions of State agency non-examining psychologists. Plaintiff argues the ALJ failed to provide the required specific and legitimate reasons, supported by substantial evidence, for rejecting the opinions of the DSHS psychological examiners. *See Lester*

*v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996).

A.  Psychological Evaluations and ALJ's Findings

    1.  Kimberly Wheeler, Ph.D.:

Dr. Kimberly Wheeler first assessed plaintiff in August 2013. (AR 515-18, 509 (second page of evaluation out of order in record).) The evaluation included examination findings of memory and concentration within normal limits, poor insight, and variable judgment, and the observation plaintiff "was focused on his tale of misery and resistant to redirection." (AR 34.) Dr. Wheeler assessed none or mild limitations in relation to short and simple instructions, performing activities in a schedule, maintaining regular attendance, and being punctual, and in performing routine tasks without special supervision; moderate limitations in relation to detailed instructions, learning new tasks, adapting to changes in routine work settings, making simple work-related decisions, being aware of hazards and taking precautions, asking simple questions or requesting assistance, completing a normal work day and week, and maintaining appropriate behavior in a work setting; and marked limitations in the ability to communicate and perform effectively in a work setting and to set realistic goals and plan independently. (AR 516.)

The ALJ found this opinion inconsistent with plaintiff's daily activities and minimal findings on examination. (AR 34.) "He was doing odd jobs and reported earning $800 a month during the dry season. While he presented as negative and focused on complaining, concentration was good and memory was intact." (*Id.*) The ALJ found no clear basis provided for the described limitations.

Dr. Wheeler again evaluated plaintiff in March 2014. (AR 510-14.) Plaintiff reported he did landscaping in exchange for rent, did painting, yard work, and pruning, painted in his spare time for pleasure, had customers who called him regularly, and worked half days on most days.

REPORT AND RECOMMENDATION
PAGE - 5

(AR 35, 511.) On mental status examination (MSE), his "mood was a mix of irritable and euthymic" and he "presented with a long string of complaints." (AR 35.) Dr. Wheeler assessed a Global Assessment of Functioning (GAF) of 60 (AR 512), reflecting moderate symptoms or moderate difficulty in social, occupational, or school functioning. Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000) (DSM-IV-TR).[3] She assessed none or mild limitations in relation to schedules/attendance/punctuality, new tasks, hazards/precautions, and simple questions/requesting assistance; moderate limitations with short/simple and detailed instructions, routine tasks and adapting to changes in setting, simple decisions, completing normal day/week, appropriate behavior, and setting goals/planning independently; and a marked limitation in communicating and performing effectively in a work setting. (AR 512-13.)

As the ALJ observed, Dr. Wheeler "noted it was not likely [plaintiff] would be able to find an employer who would put up with his prickliness and rigid/judgmental side but [that] he was basically self-employed doing irregular work and able to pay his rent." (AR 35, 513.) Dr. Wheeler also expected the impairment to last only two-to-three months with treatment. The ALJ found the limitations inconsistent with plaintiff's self-employment activities, adding: "He stated he usually had side work. He exchanged landscaping for rent. He painted for pleasure in his spare time. He had regular customers." (AR 35.)

    2.    <u>Dr. Keith Krueger, Ph.D.</u>:

Dr. Keith Krueger evaluated plaintiff in October 2013. (AR 503-08.) Plaintiff had a full

---

[3] The most recent version of the DSM does not include a GAF rating. DSM-V at 16-17 (5th ed. 2013). A GAF score cannot alone be used to "raise" or "lower" someone's level of function, and, unless the reasons behind the rating and the applicable time period are clearly explained, it does not provide a reliable longitudinal picture of mental functioning for a disability analysis. Administrative Message 13066 ("AM-13066").

scale IQ of 84, his performance was quite strong on working memory, and he "presented with pressured speech and provided a disjointed narrative, rambling from topic to topic." (AR 35, 503-04.) Dr. Krueger assessed a GAF of 60. (AR 505.) He found none or mild limitations in relation to short/simple instructions, routine tasks, and hazards/precautions; moderate limitations with detailed instructions, schedules/attendance/punctuality, new tasks, adapting to changes in setting, simple decisions, asking simple questions/requesting assistance, completing normal day/week, appropriate behavior, and setting goals/planning independently; and a marked limitation in communicating and performing effectively in a work setting. (AR 505-06.) He assessed duration of impairment as six months with treatment. (AR 506.)

In assigning this opinion little weight, the ALJ noted the finding of only six months duration of impairment and found the described limitations not consistent with plaintiff's daily activities. (AR 35.) He pointed to plaintiff's report of painting and wood working, going to junk stores to look for paint projects, and playing computer games and guitar. Also, plaintiff considered himself an artist, did odd jobs, including mowing lawns and other yard work three-to- four days a week, kept up with household chores, and borrowed money in the winter and paid his own way in the summer.

      3.     <u>Rebekah Cline, Psy.D.</u>:

Dr. Rebekah Cline evaluated plaintiff in February 2015. (AR 542-46.) Plaintiff reported he shopped, prepared meals, cleaned, managed finances, and used public transportation, either went to a job or his shop on a typical day, and built furniture as a hobby. (AR 35, 543.) He presented as markedly negative and irritable and, on MSE, had somewhat rambling speech, flat affect, above average digit span testing, no memory deficits, and good concentration. (AR 35, 543, 545-46.) Dr. Cline assessed a GAF of 60. She found moderate limitations in relation to

simple decisions, hazards/precautions, asking simple questions/requesting assistance, completing a normal day/week, and setting goals/planning independently; marked limitations in communicating and performing effectively in a work setting and in maintaining appropriate behavior at work; and none or mild limitations in all remaining basic work activities. (AR 544-45.) She identified duration of impairment as zero-to-three months with treatment. (AR 545.)

The ALJ found Dr. Cline's opinion inconsistent with plaintiff's daily activities, which included self-employment. (AR 36.) It was also inconsistent with the findings on MSE, which included good concentration and no memory deficits.

4.  <u>Robert Schneider, Ph.D.</u>:

Dr. Robert Schneider conducted a neuropsychological evaluation for DVR in June 2015. (AR 568-78.) Plaintiff reported he did landscaping, painting, house chores, and window washing. (AR 569-70.) "He was tangential and did not stay on topic during interview but focus was better on testing. He presented as intense and somewhat angry." (AR 36, 571, 576.) He had a full scale IQ of 81 and performed in the acceptable range on digit span testing. (AR 572-73.) Testing suggested an ability to learn simple production work, but difficulty with more complex demands, he had difficulty on a task requiring sustained concentration and speed, and he scored at the second percentile on immediate recall and first percentile on measure of delayed recall. (AR 573-74.) Dr. Schneider assessed a GAF of 50, describing "serious symptoms" or "any serious impairment in social, occupational, or school functioning." DSM-IV-TR at 34. Plaintiff could learn simple applied skills and probably perform simple production work, but is very slow and would not be able to sustain a competitive pace. (AR 576.) Plaintiff had difficulty with sustained concentration, had extremely impaired memory functions, and was not capable of sustaining full-time gainful employment. (AR 577.)

REPORT AND RECOMMENDATION
PAGE - 8

The ALJ found that, while testing supported a limitation to simple work, the overall record did not support extreme impairment of memory functions. (AR 36.) Plaintiff repeatedly exhibited normal memory on MSE and, while he may have some specific areas of memory dysfunction, the evidence did not suggest difficulties with simple, routine tasks. He had been able to engage in landscaping work and other odd jobs. The ALJ found no clear basis provided for Dr. Schneider's assessment of plaintiff's inability to sustain a competitive pace or sustain full-time gainful employment.

     5.     <u>Nonexamining State Agency Psychologists</u>:

Nonexamining State agency psychologists Dr. Kent Reade and Dr. Bruce Eather opined, in March and May 2015 respectively, that plaintiff could persist through a normal workday and week, but could not work with the public on a sustained basis, would work best on independent tasks with superficial contact with coworkers, and could adapt to occasional changes in a work setting, avoid normal hazards, and travel. (AR 149-50, 175-76.) While assigning significant weight to these opinions, the ALJ found new evidence, including testing by Dr. Schneider, supported a limitation to simple, routine tasks and simple work-related decisions. (AR 37.)

B.     <u>Assessment of ALJ's Findings</u>

Plaintiff denies inconsistency between his daily activities and minimal ongoing work activity and the opinions of marked difficulty communicating and performing effectively in a work setting. He notes each psychologist was aware of his work and other activities and still found him markedly impaired. He rejects the ALJ's reliance on the short-term nature of the opinions, asserting expected duration can be disproved by actual duration and that, considered as a whole, the opinions span from August 2013 to June 2015. While conceding it does not assess specific functional limitations, plaintiff also points to an April 2016 letter from his treating mental health

REPORT AND RECOMMENDATION
PAGE - 9

therapist, Carol Dunning (AR 580), as further supporting the psychologists' opinions. He also denies inconsistency between evidence of his concentration and memory and the psychologists' opinions regarding communication and performance.

The Commissioner first points to the unchallenged assessment of plaintiff's symptom testimony. The ALJ found plaintiff's testimony as to the degree of his impairment inconsistent with the medical evidence, including treatment records reflecting an active lifestyle and minimal findings on MSE; inconsistent with plaintiff's activities of performing odd jobs, working in a shop where he built furniture, and painting; and inconsistent with records reflecting good response to treatment, a report of improvement in depressive symptoms, and a treatment note describing plaintiff as "highly focused on getting Social Security and express[ing] intent to work part-time if hired." (AR 34 (citations to record omitted).) The Commissioner suggests boredom, not lack of focus, may be plaintiff's biggest mental barrier to employment, pointing to his testimony it was "[d]oubtful" he could perform a job of putting shoes in boxes because it lacked "variety" and would be too "blah." (AR 61-62; *see also* AR 33 ("He could not do a job involving putting shoes in boxes full-time because he would have mental problems. He was able to focus when working with [DVR] because he had a variety of tasks. He had a list of things to do. He works well with lists.")) The Commissioner argues it follows from this symptom testimony evaluation that the ALJ justifiably declined to rely on the examining psychologists' opinions given that they were also inconsistent with the overall record. She posits that the nonexamining psychologists' opinions, made after review of plaintiff's treatment records (*see* AR 158, 170-71), provide substantial evidence support for the ALJ's conclusion. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) ("Although the contrary opinion of a non-examining medical expert does not alone constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion, it

REPORT AND RECOMMENDATION
PAGE - 10

may constitute substantial evidence when it is consistent with other independent evidence in the record.")

The Commissioner maintains the ALJ provided the necessary specific and legitimate reasons, including inconsistency with plaintiff's work and other activities, with treatment records and minimal findings on examination, including the psychologists' own findings of good concentration and intact memory, and, with respect to Dr. Schneider, inconsistency with the overall record, which did not show extreme impairment of memory functions. *See Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012) ("'The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.'") (quoted source omitted); *Valentine v. Comm'r SSA*, 574 F.3d 685 (9th Cir. 2009) (upholding opinion rejection because the "doctor 'repeatedly reported [Valentine] was unemployable while acknowledging he was continuing to work full-time.'"); *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (ALJ may reject opinion based on inconsistency with medical record); *Morgan v. Commissioner of the SSA*, 169 F.3d 595, 601-03 (9th Cir. 1999) (ALJ appropriately considers inconsistency with a claimant's activities and internal inconsistencies within and between physicians' reports). She reiterates the ALJ's conclusion of no clear basis for opinions of Dr. Wheeler and Dr. Schneider, and asserts Dr. Wheeler's failure to reconcile her question regarding the purpose of plaintiff's disability application, in light of his self-employment, with the assessed functional limitations. Also, temporary limitations are insufficient to meet the durational requirement for a finding of disability and serve as a valid reason to reject a physician's opinion. *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008) (affirming ALJ's finding that treating physicians' short term excuse from work was not indicative of "claimant's long term functioning.").

The Commissioner contends any error in the ALJ's consideration of the opinions of Dr. Wheeler and Dr. Krueger are harmless, and/or that their opinions lack probative value, given that their temporary opinions predate the period of disability beginning August 21, 2014. *Id.* ("Medical opinions that predate the alleged onset of disability are of limited relevance.")  The Commissioner further observes states that, while not finding marked impairment, the ALJ did not wholly reject the existence of limitations in communicating and performing effectively.  She points to the two-week DVR trial work period in August 2015 in which plaintiff appeared angry at times, but otherwise got along very well with coworkers, had a consistent and steady work speed, followed directions very well, was very willing to accept supervision, stayed on task at all times, followed multi-step written instructions, and did a thorough job.  (AR 36, 341-46.)

As plaintiff observes, several of the justifications offered by the Commissioner for rejecting the opinions of the examining psychologists were not relied upon by the ALJ in the decision.  The ALJ did not discount any opinion evidence as predating the relevant time period, find Dr. Wheeler's opinions contradicted by treatment records, or find any of the opinions contradicted by the evidence from the DVR trial work period.  (*See* AR 34-36.)  Nor did the ALJ relate the findings regarding plaintiff's symptom testimony to the assessment of the psychologists' opinions.[4]  The Court reviews the ALJ's decision "based on the reasoning and factual findings offered by the ALJ – not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1225 (9th Cir. 2009).

Some of the ALJ's reasons withstand scrutiny.  The ALJ reasonably considered that Drs.

---

[4] Plaintiff asserts that, while case law allows courts to infer that an ALJ's analysis of a claimant's symptom testimony applies equally well to similar reports of third parties, *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012), no such parallel exists for imputing the same rational to examining doctors.

REPORT AND RECOMMENDATION
PAGE - 12

Wheeler, Krueger, and Cline viewed plaintiff's impairment as short-term with available treatment. Notably, Dr. Cline assessed impairment lasting "0-3 months" and, although not discussed by the ALJ, recommended referral to DVR and stated: "He is capable of work even though he thinks it is not enough to 'support my lifestyle' and perhaps his lifestyle needs to be looked at and adjusted to meet his ability to earn a living." (AR 545.)  The ALJ likewise reasonably considered Dr. Wheeler's observation that plaintiff was basically self-employed and paying his own rent. (AR 513 ("On the one hand, he'd not likely be able to find employer to put up with his prickliness and rigid/judgmental side. On the other hand, he's basically self-employed in irregular fashion, getting more work in summer than winter. He's able to pay his rent, or exchange landscaping in exchange. When he borrows money, he's able to repay in fairly short order. He's not relying on HEN. So it's unclear what the purpose of his application is."))

The ALJ also properly considered inconsistency between the opinions of the psychologists and the evidence of his work and other activities.  Contrary to plaintiff's contention, this is not an instance in which the ALJ improperly discounted opinion evidence due to "minimal home activities." (Dkt. 20 at 2.)  Far from minimal, the evidence suggests plaintiff's involvement in extensive and diverse activities, including significant, regular part-time work activity, hobbies, and standard daily activities.[5]

The Court, however, finds other aspects of the ALJ's decision deficient.  While the ALJ could identify inconsistency between evidence in the record and the opinion of Dr. Schneider as to concentration and memory functions, there is no clear inconsistency between opinions of marked difficulty with communication and effective performance in a work setting and findings

---

[5] The ALJ also arguably could have, but did not address various other issues raised by the Commissioner in this proceeding.

REPORT AND RECOMMENDATION
PAGE - 13

of unimpaired memory and concentration.  There is also an insufficient explanation for the conclusion Dr. Wheeler and Dr. Schneider had no clear basis for assessed limitations.  Each psychologist found plaintiff impaired on MSE in respect to marked limitation(s) assessed, particularly in relation to communication.  (*See, e.g.*, AR 514, 517 (Dr. Wheeler found thought process and content and insight and judgment not within normal limits, most recently stating: "Derails at every turn, resistant to redirection.  At times, if challenged, will simply change the topic.  Content is 99.9% focused on what he doesn't want, heavy attachment there."; "Insight is poor.  Judgment by test varies, at times reasonable, at times not recognizing potential risks. (e.g., would let pan on fire just burn out, would lock door and blame coworkers instead of recognizing potential intruder)."); AR 571-78 (Dr. Schneider:  "On interview, Jim presents with typical characteristics of brain injury.  He exhibits a dyscontrol syndrome.  He tends to speak emotionally and somewhat uncontrollably.  He does not stay on topic, his explanations are confusing and his thinking is unclear.  He presents as an intense and somewhat angry individual.  He did not consistently answer the questions that were asked."))  Drs. Kruegher and Cline similarly included observations and findings pertinent to the assessed marked limitation in communicating and performing effectively in a work environment, and, per Dr. Cline, in maintaining appropriate behavior in a work setting.  (*See, e.g.*, AR 504 (Dr. Krueger: "Pressured speech; disjointed narrative[.]  [R]ambles from topic to topic, not finishing his points very consistently; hard to follow, so hard to stay interested in details spewing forth[.]"); AR 543-46 (Dr. Cline:  "Poor attitude/ maladaptive personality traits[.]   Marked; claimant is markedly negative, irritable, frustrated and difficult to engage with due to this propensity to see things 'half empty.'"; speech somewhat rambling and easily off topic, attitude/behavior of gruff, difficult, negative, angry, irritable, and poor eye contact, and flatted affect; fund of knowledge not within normal limits, and

REPORT AND RECOMMENDATION
PAGE - 14

had some ability to think abstractly, but great difficulty articulating his thoughts, and insight and judgment appeared variable).)

Considered as a whole, the Court finds the errors in the ALJ's reasoning to undermine the substantial evidence support for his conclusions. The ALJ should reconsider the opinion evidence associated with plaintiff's mental impairments on remand.

<u>Vocational Rehabilitation Counselor</u>

The record contains a report from DVR counselor Kay Kennedy. (AR 342-46.) As described by the ALJ:

> The claimant participated in a work assessment through vocational rehabilitation in August 2015. He did janitorial work for a 2-week period. He worked 3.75 hour days. It was noted that he had no issues with fine motor skills but he was slow in changing positions from sitting to standing and standing to sitting and in climbing stairs and bending. Work speed was consistent and steady. He required several small breaks. He got along well with coworkers and followed directions well. However, he came across as angry at times. He did well with a written task list. He was very willing to accept supervision. Work was done thoroughly. He was able to stay on task at all times. It was felt he was not physically capable of working full-time. He could work only 10 to 15 hours per week as he could not physically work more than 3 hours per day.

(AR 36.)

The ALJ gave the observations in this work assessment some weight. However, he found the conclusion plaintiff was not physically capable of full-time work not supported by the treatment record, and appearing to be based on plaintiff's self-report, which was inconsistent with the record. (*Id*.) Plaintiff had been released to full activity without restriction after recovery from his knee surgery. (AR 36-37.) The observations concerning plaintiff's mental functioning were, on the other hand, consistent with the RFC. (AR 37.)

Social Security regulations applicable to plaintiff's claim characterize Kennedy as an

REPORT AND RECOMMENDATION
PAGE - 15

"other source," and required the ALJ to consider the evidence she provided as to the severity of impairment and its impact on ability to work. 20 C.F.R. § 415.913, and Social Security Ruling (SSR) 06-03p (rescinded effective March 27, 2017).[6] The ALJ could reject Kennedy's lay statements with germane reasons. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

Plaintiff argues the ALJ failed to fully incorporate mental and social limitations noted by Kennedy. Kennedy, for example, stated plaintiff needed an environment he is comfortable with and a patient and understanding staff, requires a "written task list as too many verbal instructions are overwhelming for him[,]" and "will benefit from a supervisor that will allow [him] to work independently and not micro-manage his tasks." (AR 343-45.) As the Commissioner observes, the RFC need only be consistent with, not identical to, assessed limitations. *See Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223 (9th Cir. 2010) (ALJ properly incorporated opinions by assessing RFC limitations "entirely consistent" with limitations assessed by physician). The ALJ here reasonably accounted for the evidence from Kennedy as to mental impairments by limiting plaintiff to simple, routine, repetitive tasks, simple work-related decisions, superficial public contact, occasional coworker interaction, and tasks that can be accomplished independently without coordinated efforts with others. *See id. See also Rounds v. Comm'r of Social Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015) (ALJ may "rationally rely on specific imperatives regarding a claimant's limitations, rather than recommendations.")

Plaintiff also argues the ALJ erred in finding Kennedy's reliance on his self-report and in relying on dated information relating to his knee, prior to the August/September 2015 DVR trial work period. Plaintiff had knee surgery on May 6, 2014. (AR 708.) By June 6, 2014, he reported

---

[6] New regulations effective March 27, 2017, after the ALJ's decision, characterize Kennedy as a "nonmedical source." 20 C.F.R. § 416.903(j), 416.913(a)(4).

REPORT AND RECOMMENDATION
PAGE - 16

doing relatively well, walking and doing activities within reason, with no increase in pain. (AR 524.) The physician found plaintiff's knee had full motion, neurovascularly intact, with no effusion and no joint line tenderness, and stated: "The patient is doing great. I am happy that 70% of his pain is gone. He is doing very well. He is released to full activity with no restrictions. He will follow up with me on an as-needed-basis." (AR 524-25.) Plaintiff did complain of knee pain in appointments in February through July 2015. (AR 522, 543, 594, 694, 699.) However, a June 2015 appointment showed mild laxity in his knee, with easily displaced patella, but full range of motion in both knees and normal sensation and strength, and imaging that same month showed no evidence of acute fracture, moderate suprapatellar effusion, and intact surgical hardware. (AR 700, 703.) He was observed to ambulate well, without a limp, in July 2015. (AR 695.) In August 2015, plaintiff had "no complaints," including no new or unusual musculoskeletal complaints, and normal range of motion on examination. (AR 697-99.) Considering the evidence as a whole, the Court finds the ALJ provided a sufficient germane reason for discounting Kennedy's statements as to plaintiff's physical functioning based on inconsistency with the treatment record. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005).

At the same time, and as plaintiff observes, Kennedy did not rely solely on plaintiff's self-report. (*See* AR 342, 345-46 (it took plaintiff a little longer to sit or stand from a sitting position, climbing stairs was an issue, and he took extra time bending over if he had to pick something up or clean a lower surface; "It is very obvious by observing James that he is in pain when he works, and that he pushes through the pain even if he shouldn't."; "He is not capable of working more than three hour work shifts, and that is sometimes pushing it. James is in constant pain and it is very obvious that he struggles to walk, let alone work."; "James pushes through the three hours even though it is obvious that he is in a lot of pain doing it.")) (*But see* AR 341 ("James admits

REPORT AND RECOMMENDATION
PAGE - 17

that three hour shifts are his limit."))  The ALJ should, therefore, take the opportunity on remand to clarify his consideration of Kennedy's reliance on plaintiff's self-report.

## CONCLUSION

For the reasons set forth above, this matter should be REMANDED for further administrative proceedings.

## DEADLINE FOR OBJECTIONS

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **fourteen (14) days** of the date on which this Report and Recommendation is signed.  Failure to file objections within the specified time may affect your right to appeal.  Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed.  Responses to objections may be filed within **fourteen (14) days** after service of objections.  If no timely objections are filed, the matter will be ready for consideration by the District Judge on **November 23, 2018**.

DATED this 7th day of November, 2018.

Mary Alice Theiler
United States Magistrate Judge